**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____

JAMES H. BECKFORD,              :
                                 :  Civil Action No. 10-2035 (JLL)
          Petitioner,    :
                                 :
          v.                  :      **O P I N I O N**
                                 :
OSCAR AVILES, et al.,        :
                                 :
          Respondents.   :
_____:

**APPEARANCES:**

    JAMES H. BECKFORD, Petitioner, Pro Se
    A# 030-171-471
    # 231813
    Hudson County Correctional Center
    30 Hackensack Avenue
    Kearny, New Jersey 07032

    EDWARD L. BAROCAS, ESQ.
    AMERICAN CIVIL LIBERTIES UNION OF NJ FOUNDATION
    89 Market Street, 7th Floor
    Newark, New Jersey 07102
    Counsel for Amici Curiae

    CARA MARIA SIMS, ESQ.
    OFFICE OF THE U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey 07102
    Counsel for Respondents

**LINARES, District Judge**

    Petitioner, James H. Beckford ("Beckford"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Hudson County Correctional Center in Kearny, New Jersey, pending his removal

from the United States.[1]  On or about April 22, 2010, Beckford filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his mandatory detention pending removal proceedings as unconstitutional.  Beckford paid the $5.00 filing fee.  With his petition, Beckford also filed an application for an Order to Show Cause and for appointment of counsel (see Docket entry nos. 2 and 3).  Beckford brings this action against Oscar Aviles, Warden at Hudson County Correctional Center; Scott Weber, Field Office Director for Detention and Removal; John T. Morton, Assistant Secretary of the ICE; Janet Napolitano, Secretary of the DHS; and Eric Holder, United States Attorney General, as the named party respondents (hereinafter referred to as "the Government") in this action.  For the reasons stated below, this petition for habeas relief will be denied without prejudice because mandatory detention pending completion of removal proceedings has been held constitutionally permissible.[2]  See Demore v. Kim, 538 U.S. 510 (2003).

---

[1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

[2]  Because the petition will be dismissed, Beckford's applications for an Order to Show Cause and for appointment of counsel are rendered moot.

2

I.  BACKGROUND

Beckford is a native and citizen of Jamaica, who was admitted into the United States as a lawful permanent resident in 1974, when he was fourteen (14) years old.  He states that his parents, four siblings and nine children are all United States citizens "to whom petitioner is well attached."  (Petition, ¶ 9).  Beckford admits that he was convicted in 1982 on a charge of drug sales, and in 2007 on a charge of conspiracy to possess marijuana.  He had pled guilty to the charge of conspiracy to possess marijuana in order to secure an earlier release from incarceration, without knowing the consequences of his plea.  (Pet., ¶ 17).  Beckford states that the ICE took him into custody on March 2, 2010, two and a half years after he was released from incarceration in 2007.  (Pet. , ¶ 18).  He is subject to removal from the United States on the ground that he is a convicted alien, having been convicted of crimes of moral turpitude.  His removal proceedings are ongoing.  (Pet., ¶¶ 18, 19).  Beckford alleges that he is entitled to a hearing as to his eligibility for cancellation of removal, and seeks the Court's assistance in his release from custody.  (Pet., ¶¶ 19, 20).

Beckford admits that he was in ICE custody only 45 days when he filed this habeas petition.  (Pet., ¶¶ 9, 22).  He had a scheduled hearing before an Immigration Judge on or about May, 12, 2010.  (Pet., ¶ 21).  At the time he filed his habeas

petition, on April 22, 2010, Beckford allegedly has not had a hearing or custody review. He states that he poses no danger to the community, nor is he a flight risk. He also states that his drug offenses occurred about four years ago, and he has had no disciplinary infractions. Beckford further alleges that he has strong ties to his church and community as well as to his family. He also consents to reasonable terms for release under supervision, including electronic monitoring. (Pet., ¶¶ 22, 23). Beckford admits that his removal proceedings are pending, and that he is challenging his removal. Specifically, Beckford has applied for Cancellation of removal under 8 U.S.C. § 1229b(a). (Pet., ¶¶ 19-23).

On October 20, 2010, Beckford filed an application to be released, a notice of motion asserting civil and human rights violations, and a notice of intent to file for United States citizenship. (Docket entry no. 6).

On November 29, 2010, the Government filed an answer to the petition with a copy of the relevant immigration record. (Docket entry no. 8). In its answer, the Government provides the pertinent history as to Beckford's immigration proceedings. In October 2004, Beckford was identified as a criminal alien after being interviewed by ICE officers, and a Notice to Appear was served on him on October 28, 2004. (Answer at p. 3, Declaration of Lauren Farber Weintraub ("Weintraub Decl."), at ¶ 7,

4

Respondents' Exhibit D).  On November 10, 2004, an Immigration Judge set a $10,000 bond and Beckford was released from custody on December 1, 2004.  However, Beckford failed to appear for his immigration hearing, which had been scheduled for May 31, 2005. Beckford failed to appear for three additional hearings and it was determined that he had been detained in a criminal matter. Consequently, the case was administratively terminated on November 5, 2005.  (Weintraub Decl., ¶¶ 9-11, 13, Resp. Exs. F, G).

Beckford was released from prison in 2007 and his immigration case was re-calendared on the non-detained docket. (Weintraub Decl., ¶ 15).  He appeared <u>pro se</u> before the Immigration Judge on February 24, 2009 and again at a master calendar hearing on June 2, 2009.  At the June 2009 hearing, Beckford had informed the Immigration Judge that The Legal Aid Society would soon represent him.  (Wientraub Decl., ¶¶ 16, 17). On March 2, 2010, Beckford appeared at a master calendar meeting with counsel and was taken into ICE custody pursuant to a determination that he was subject to mandatory detention while his removal proceeding are pending.  (<u>Id</u>., ¶¶ 18, 19; Resp. Exs. I, J).  The Immigration Judge continued Beckford's case on March 18, 2010 and again on May 12, 2010, for purposes of attorney preparation on behalf of Beckford.  (Weintraub Decl., ¶¶ 20, 21, 23).

A merits hearing on the removal proceedings was scheduled for November 18, 2010.  Before the hearing date, on October 6, 2010, Beckford's counsel again requested a continuance.  On October 18, 2010, the Immigration denied the request for a continuance.  Thereafter, on October 20, 2010, petitioner's counsel filed a motion to withdraw as counsel.  At the November 18, 2010 hearing, Beckford's counsel withdrew representation.  Beckford also requested a bond hearing.  The Immigration Judge re-scheduled the hearing for January 19, 2011.  (Weintraub Decl., ¶¶ 24-28; Resp. Exs. I, M and O).

The Government contends that it has not caused any delay in Beckford's removal proceedings, and that any delay was caused by Beckford's multiple requests for a continuances.  (Weintraub Decl., ¶ 30).

On February 9, 2011, the American Civil Liberties Union, the American Civil Liberties Union of New Jersey, and the Washington Square Legal Services, Inc., (hereinafter, "ACLU"),  filed a brief of amici curiae.  (Docket entry no. 12).

## II.  CLAIMS PRESENTED

Beckford asserts the following claims in support of his habeas petition.  First, he argues that his mandatory detention violates federal law, namely, 8 U.S.C. § 1226(c), because he was not detained "when ... released" from criminal custody.  Second, Beckford contends that he is not subject to mandatory detention

because he has a substantial challenge to removal.  See Gonzalez v. O'Connell, 355 F.3d 1010, 1019-20 (7th Cir. 2004)(noting that Demore left open the question as to the constitutionality of mandatory detention as applied to an alien who is raising a good faith challenge to removal); Tijani v. Willis, 430 F.3d 1241, 1247 (9th Cir. 2005)(Tashima, J. concurring)(in light of serious constitutional concern, mandatory detention statute should be construed as applying only to those aliens who cannot raise a substantial challenge against removability).  Finally, Beckford alleges that his prolonged detention, without a hearing to determine if such detention is justified, violates both his right to due process under the United States Constitution and the Immigration and Nationality Act ("INA").

The Government contends that Beckford's mandatory detention under 8 U.S.C. § 1226(c) is constitutional, pursuant to the Supreme Court's ruling in Demore v. Kim, 538 U.S. 510 (2003). Further, the Government argues that Beckford's various drug convictions subject him to mandatory detention under § 1226(c). The Government does concede that Beckford was not taken into DHS custody until years after he was released from criminal incarceration for an offense enumerated by 8 U.S.C. § 1226(c). However, the Government urges the Court to defer to the Board of Immigration Appeals' ("BIA") interpretation of 8 U.S.C. § 1226(c) in Matter of Rojas, 23 I & N Dec. 117 (BIA 2001).

7

The ACLU thoroughly briefed the issues raised by Beckford in his petition for habeas relief. Namely, the ACLU argue that Beckford's mandatory detention violates federal law because he was not detained "when ... released" from criminal custody.

### III. DISCUSSION

A.  Standard of Review

Beckford seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

8

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.
denied, 399 U.S. 912 (1970).

B.   Jurisdiction to Grant Habeas Relief

As stated earlier, Beckford brings this habeas action under
28 U.S.C. § 2241(c)(3), which requires that the petitioner show
that "he is in custody in violation of the Constitution or laws
or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The
Court has subject matter jurisdiction over this petition because
Beckford is being detained within its jurisdiction at the time he
filed his petition, and because Beckford asserts that his
continued detention is not statutorily authorized and is
constitutionally impermissible because it violates due process
under the Fifth Amendment.

C.   Relevant Statutory and Case Law Authority

The Government is holding Beckford pursuant to the mandatory
detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the
INA.  This statute provides for the mandatory detention, without
bond while removal proceedings are pending, of those aliens who
committed certain enumerated categories of criminal and other
offenses.

Specifically, Title 8 of the United States Code, Section
1226 states:

    § 1226. Apprehension and detention of aliens
    (a) Arrest, detention, and release. On a warrant issued by
    the Attorney General, an alien may be ... detained pending a
    decision on whether the alien is to be removed from the

9

United States. Except as provided in subsection (c) and
pending such decision, the Attorney General-
    (1) may continue to detain the arrested alien;
    [or] may release the alien on-
    (A) bond of at least $1,500 with security approved by,
    and containing conditions prescribed by, the Attorney
    General; or
    (B) conditional parole....
(c) Detention of criminal aliens.
    (1) Custody. The Attorney General shall take into
    custody any alien who ...
    (A) is inadmissible by reason of having committed any
    offense covered in section 1182(a)(2) of this title,
    (B) is deportable by reason of having committed any
    offense covered in section 1227(a)(2)(A)(ii), (A)(iii),
    (B), (C) or (D) of this title,
    (C) is deportable under section 1227(a)(2)(A)(i) of
    this title on the basis of an offense for which the
    alien has been sentenced to a term of imprisonment of
    at least 1 year, or
    (D) is inadmissible under section 1182(a)(3)(B) of this
    title or deportable under section 1227(a)(4)(B) of this
    title,

    when the alien is released, without regard to whether
    the alien is released on parole, supervised release, or
    probation, and without regard to whether the alien may
    be arrested or imprisoned again for the same offense.

    (2) Release. The Attorney General may release an alien
    described in paragraph (1) only if the Attorney General
    decides pursuant to section 3521 of Title 18 that
    release of the alien from custody is necessary to
    provide protection to a witness, a potential witness, a
    person cooperating with an investigation into major
    criminal activity, or an immediate family member or
    close associate of a witness, potential witness, or
    person cooperating with such an investigation, and the
    alien satisfies the Attorney General that the alien
    will not pose a danger to the safety of other persons
    or of property and is likely to appear for any
    scheduled proceeding.  A decision relating to such
    release shall take place in accordance with a procedure
    that considers the severity of the offense committed by
    the alien.

8 U.S.C. § 1226.

In other words, detention under § 1226(a) is discretionary and requires individualized bond hearings, while detention under § 1226(c) is mandatory and does not provide for any bond hearing. Both provisions apply to "pre-removal-order detainees," that is, to those aliens who are in the midst of their removal proceedings and thus whose removal orders have not become "final."

Section 1226(a) provides the Attorney General (or the DHS)[3] with the discretionary authority to release an alien on bond or conditional parole pending completion of removal proceedings. Under § 1226(a), an alien may be released where he can show, to the satisfaction of the DHS/ICE, that he is not a flight risk or a danger to the community.  8 C.F.R. § 236.1(c)(8).  A similar standard applies before the Immigration Judges and BIA.  See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

Under the mandatory detention statute, however, immigration courts are without jurisdiction to redetermine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond.  8 C.F.R. § 1003.19(h)(2)(i)(D)(2008).  An alien may request a Joseph hearing before an immigration judge to determine if the alien is properly

---

[3]  Pursuant to the Homeland Security Act of 2002, all immigration functions vested in the Attorney general, with a few exceptions, were transferred to the Secretary of the DHS.  The Attorney General has delegated his discretionary custody redetermination authority to the Immigration Judges and the BIA. See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

included in the mandatory custody provision, pursuant to Matter of Joseph, 22 I.& N. Dec. 299 (BIA 1999) and 8 C.F.R. § 1003.19(h)(2)(ii).

Once the removal order becomes "final," the alien's "removal period" begins to run.  Specifically, the "removal period" starts on the latest of the following (1) the date when the order of removal issued by an Immigration Judge ("IJ") becomes administratively final (that is, appeal to BIA was either taken and ruled upon in the sense that the appeal was denied, or the time to file such appeal simply expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date when the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day "removal period" to remove an alien.  Detention during this 90-day removal period is mandatory.  Section 1231(a)(1)(c), however, provides that this 90-day removal period may be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the government may further detain the alien under 8 U.S.C. §

12

1231(a)(6).  However, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention."  Id. at 700-01.  However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Moreover, no language in Zadvydas excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c).  Consequently, an alien who, during his presumptive six-month Zadvydas-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months.  See, e.g., Wang v. Carbone, No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the

presumptive period excluding the period of non-cooperation and relying on <u>Riley v. Greene</u>, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and <u>Sango-Dema v. District Director</u>, 122 F. Supp.2d 213, 221 (D.Mass. 2000)).  Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in <u>Zadvydas</u>, causing a quasi-tolling.

Thus, "<u>Zadvydas</u> does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."  <u>Pelich v. INS</u>, 329 F.3d 1057, 1060 (9th Cir.2003).

D.   <u>The Issue of Mandatory Detention</u>

The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here.  <u>See</u> 8 U.S.C. § 1226(c)(2).[4]  Further, an alien detained under § 1226(c) is not afforded a bond hearing before an IJ, whereas a

---

[4]  Section 1226(c)(2) reads:  The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

noncriminal alien, who is detained under § 1226(a), is given such a hearing.  See 8 U.S.C. § 1226(a), (c).  Consequently, Beckford, as an alien detained under § 1226(c), does not have an opportunity to show that he does not pose a danger to the community or a flight risk to be released on bond.  See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution.  In Demore, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him.  The Supreme Court held that detention of lawful permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation proceedings.  Id. at 523-24.  In doing so, the Court noted that detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

However, the Supreme Court's holding in Demore, as noted in Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "narrow[

] ... grounded in repeated reference" to the brevity of removal
proceedings.  Id. at 664.  In Demore, the Supreme Court
recognized that § 1226(c) was intended only to "govern [ ]
detention of deportable criminal aliens pending their removal
proceedings," which the Court stressed typically "lasts roughly a
month and a half in the vast majority of cases in which it is
invoked, and about five months in the minority of cases in which
the alien chooses to appeal" his removal order to the BIA.
Demore, 538 U.S. at 527-28 (emphasis in original).

D.  Statutory Authority for Petitioner's Detention

     In this case, there is no dispute that Beckford's removal
period has not begun since his removal order is not
administratively final.  See 8 U.S.C. § 1231(a)(1)(B).
Accordingly, Beckford's detention is governed by either § 1226(a)
or 1226(c).  Beckford argues that his detention is governed by
§ 1226(a)(which authorizes release on bond) because § 1226(c)
does not apply where an alien is not taken into DHS custody until
several years after his release from incarceration for an offense
listed in § 1226(c).  The Government argues that his detention is
mandated by § 1226(c)(which does not permit release on bond)
because this statute mandates detention so long as the alien is
released from incarceration for an offense listed in § 1226(c).
Specifically, the Government argues that this Court is required

to defer under <u>Chevron</u>[5] to the BIA's interpretation of § 1226(c) in <u>Matter of Rojas</u>, 23 I. & N. Dec. 117 (BIA 2001).  In <u>Matter of Rojas</u>, the BIA determined that, where Rojas was released on parole for an offense covered by § 1226(c)(1) two days before he was taken into immigration custody, § 1226(c)(1) applied, even though Rojas was free in the community for two days.[6]

Under the <u>Chevron</u> analysis, if "Congress has directly spoken to the precise question at issue," courts and the agency "must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43.  In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains

_____

[5]  <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

[6]  In a later decision, <u>Matter of Garcia Arreola</u>, 25 I. & N. Dec. 267, 270 (BIA 2010), the BIA ruled that § 1226(c) applies only where the alien has been released from custody for one of the offenses enumerated in that section after October 8, 1998. The BIA determined that Garcia Arreola was not subject to mandatory detention because he was released from non-DHS custody resulting from assault crimes which were not offenses under § 1226(c)(1).  However, in a footnote, the BIA states that it is not receding from <u>Matter of Rojas</u>, 23 I. & N. Dec. 117.  This Court notes that in <u>Matter of Garcia Arreola</u>, the DHS "urge[d the BIA] to interpret the statute to regard mandatory detention under section 236(c)(1) of the Act as arising from a post-TPCR 'release' when the release is from custody based on an underlying criminal conviction that gives rise to the qualifying inadmissibility or deportability set out in sections 236(c)(1) (A)-(D) of the Act."  <u>Garcia Arreola</u>, 25 I. & N. Dec. at 271.

that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987)(quoting Chevron, 467 U.S. at 843 n. 9).  Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004).

This Court agrees with the First Circuit that Congress clearly intended to give the Attorney General the authority to detain an alien under § 1226(c)(1) only if the Attorney General takes the alien into custody at the time the alien is released from incarceration resulting from one of the offenses enumerated in § 1226(c)(1).  See Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009).  In Saysana, Massachusetts released Mr. Saysana in 1991 from a five-year sentence for a 1990 conviction for indecent assault and battery; in 2007 DHS took him into custody under 8 U.S.C. § 1226(c)(1) and initiated removal proceedings charging that the indecent assault and battery conviction qualified as an aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  See Saysana, 590 F.3d at 9.  In a precedent decision, Matter of Saysana, 24 I. & N. Dec. 602 (BIA 2008), the BIA ruled that § 1226(c)(1) required Mr. Saysana's detention because he was released from state custody in 2005 when the charge of failing to register as a sex offender was dismissed,

18

and he had committed an offense listed in § 1226(c)(1) in 1990. The District Court granted a writ of habeas corpus and the First Circuit Court of Appeals affirmed, holding that 8 U.S.C. § 1226(a) governed Mr. Saysana's pre-removal-period detention because § 1226(c)(1) on its face did not apply where Mr. Saysana was not taken into immigration custody until 16 years after he was released from incarceration for the offense listed in § 1226(c)(1):

> Indeed, if the reference to "when the alien is released" is read to encompass *any* release from *any* non-DHS custodial setting after the expiration of the TPCR, that phrase is completely disjointed from the text that precedes and follows it. As we have noted, the preceding text specifically enumerates offenses relating to removability; the subsequent reference to the "same offense" is only sensibly read to relate back to the aforementioned statutorily listed "offense[s]." Absent a clear direction in the text to read multiple uses of the same term to carry different meanings, we shall not do so. Rather, we shall read the term uniformly throughout the provision.

Saysana, 590 F.3d at 14-15 (footnotes omitted).

Indeed, most District Courts considering the issue have rejected the BIA's interpretation of § 1226(c)(1) in Matter of Rojas. See, e.g., Sylvain v. Holder, 2011 WL 2580506 (D.N.J. June 28, 2011); Louisaire v. Muller, 758 F. Supp.2d 229, 236 (S.D.N.Y.2010)("Matter of Rojas, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal

sentences for those *same offenses,* even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation'"); Monestime v. Reilly, 704 F. Supp.2d 453, 458 (S.D.N.Y. 2010)("For over a decade, courts analyzing section 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody on or about the time he is released from custody for the offenses that renders him removable"); Burns v. Cicchi, 702 F. Supp.2d 281 (D.N.J. 2010)(holding that § 1226(c) does not apply where alien was taken into immigration custody more than 15 years after release from incarceration for covered offense); Bracamontes v. Desanti, 2010 WL 2942760 (E.D. Va. June 16, 2010); Dang v. Lowe, 2010 WL 2044634 (M.D.Pa. May 20, 2010)(holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F. Supp.2d 774, 774-75 (E.D.Mich. 2010)("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of Rojas"); Scarlett v. DHS, 632 F. Supp.2d 214, 219 (W.D.N.Y. 2009)("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying

20

criminal charges"); Waffi v. Loiselle, 527 F. Supp.2d 480, 488 (E.D.Va. 2007)("the mandatory detention statute ... does not apply to an alien ... who has been taken into immigration custody well over a month after his release from state custody" for an enumerated offense).

This Court rejects the Government's arguments that § 1226(c) is ambiguous (and that this Court should therefore defer to the BIA's interpretation under Chevron). The Government fails to raise any real or substantive support for the contention that Petitioner's view would render parts of § 1226(c) meaningless. For instance, the Government notes that some of the enumerated offenses in § 1226(c)(1)(A)-(D) do not require criminal conduct, criminal conviction or any criminal sentence from which release can be obtained. However, as suggested by the ACLU, this argument "betrays Respondents' shortsighted reading of the statute. Even the agency itself agrees that there *must* be a release in order for mandatory detention to be triggered. See Matter of Garcia-Arreola, 25 I. & N. Dec. 267 (BIA 2010)(mandatory detention requires a release from custody for an enumerated offense after the effective date of the statute)." (ACLU Brief at Docket entry no. 12 at p. 17). Notably, the First Circuit addresses this concern in Saysana: "A far more natural reading is that the 'when released' language applies to an alien who has been detained criminally for one of the listed activities. This reading not only relates the 'when released' to

21

the prior language in the subsection, but it also explains the later use of the terms related to criminal detention [parole, probation, supervised release] and the use of the term 'same offense' at the end of subsection (c)(1)."[7] <u>Saysana</u>, 590 F.3d at 14).

Therefore, this Court holds that Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from one of the offenses enumerated in § 1226(c).  <u>See</u>, <u>e.g.</u>, <u>Matter of Rojas</u>, 23 I. & N. Dec. at 131 ("The legislative mandate to detain is limited to those aliens who are taken into immigration custody when released from criminal incarceration" for an offense enumerated in § 1226(c)(1))(Rosenberg, dissenting).  Because the DHS did not take Beckford into custody when he was released from incarceration in 2007, but waited to take him into custody until March 2, 2010, almost three years later, Beckford is not subject to mandatory detention under § 1226(c)(1).  Instead, Beckford's pre-removal-period detention is

_____

[7]  The statute commands: "The Attorney General shall take into custody any alien who—is inadmissible ... or deportable [by reason of having committed an enumerated offense], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  8 U.S.C. § 1226(c)(1).

governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond.

Accordingly, this Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), within 10 days of the date of the entry of the Order accompanying this Opinion.[8]

### III. CONCLUSION

For the reasons set forth above, the Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).


s/ Jose L. Linares
JOSE L. LINARES
United States District Judge

Dated:    August 5, 2011

---

[8]  This Court need not address the remaining issues and claims asserted in the petition because the Court has determined that Beckford's pre-removal period detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1226(c), and is therefore entitled to an individualized bond hearing, which essentially renders the other arguments by the parties immaterial now.